You may be seated. The clerk will call the next case. It's 314 of 308-Q of the State of Illinois, I believe, by Richard Myers v. Torlando McDonald, appellant by Steve Varro. Mr. Varro, you may proceed. Good afternoon, Your Honors. Counsel? I'm Steve Varro with the Office of the State Appellate Defender, 3rd District, for defendant appellant Torlando McDonald. May it please the Court, we have a very strange case of harassing a witness today. It's a case where the State presented no evidence whatsoever connecting the defendant to the case in which the witness testified. In this case, the incident that brought us here started on a jail bus when two inmates battered another inmate. My client was convicted of aggravated battery arising out of that incident. I have not raised an issue with that conviction in this appeal. So the sole issue for this Court today is whether my client was guilty not just of aggravated battery, but also of harassing a witness for what occurred on that bus. Harassing a witness is a specific intent crime. So the law requires that the State prove beyond reasonable doubt that the defendant knew that the person that he was harassing was a witness and specifically intended to harass that person because of their testimony as a witness. As I said initially, here there is nothing connecting McDonald to Tony Harris or the Tony Harris case in any way. The statute doesn't require that, does it? Well, it's not clear whether the Court has decided that issue because there are no cases where the State has actually brought a harassing witness charge and not provided that kind of connection. I mean, the State hasn't cited a single one. And if you look at all the cases that are out there, they tend to involve someone who's testified against the defendant himself or against a friend of the defendant or a family member, someone the defendant knows, some connection. So that's actually a question that I don't think has been decided, whether that needs to be proven or not. But even if that doesn't need to be proven, that's certainly the most probative piece of evidence that you could have in a harassing witness case that the defendant knew that the person that testified was a witness and specifically intended to harass them because of their testimony as a witness would be some kind of connection that would establish that. So it's very significant that the State provided no evidence of that in this case. The testimony was that McDonald didn't know Harris. They're complete strangers. Just in stark contrast to all the other cases out there. And there wasn't even a connection between anyone else on that bus and Tony Harris or the Tony Harris case, other than, of course, Reginald Anderson, who testified against him. So we don't know that anyone on that bus even knew Tony Harris. And it's significant that in this case there were several inmates on that bus who said they didn't know each other. So Boucher, one of the other inmates on the bus, testified that he didn't know Reginald Anderson and he didn't know Torlando McDonald. Reginald Anderson said he didn't know Boucher and McDonald said he didn't know Harris. So Peoria County Jail, you know, it's not a small jail. A number of inmates don't know each other, even on this bus here. So the lack of connection, I think, to the case is very significant. Lacking that, the State tried to rely solely on the fact that some inmates on the bus used the term snitch or something synonymous with that a couple minutes before the harassment occurred. But that at best shows that McDonald knew that other inmates believed that Anderson was a snitch. Because the problem with the State's argument is a snitch doesn't mean someone who's testified as a witness. It's broader than that. It includes basically anyone who reports some sort of wrongdoing or misconduct to an authority figure of some sort. It's synonymous with tattletaling, which Anderson, in fact, testified that the terms that were used in this case, snitch and the synonymous terms with that, meant tattling. So a person would be considered snitch if they, for example, reported a disciplinary infraction to jail guards and they were never going to testify about that. If they reported that some inmates were making some alcohol in their cell or something, then they're not going to testify about that. That person might be considered snitch, but they're not going to testify. And you also have cases of confidential informants, which is a whole class of people who would be considered snitches who wouldn't testify in any case. And this is harassing a witness. The statute is harassing a witness, so it doesn't include other kinds of whistleblowers. The legislature didn't include that in there. It's witnesses and jurors is what the statute covers. So in this case, it's just pure speculation to go from some inmates used the word snitch to McDonald knew that Anderson had testified as a witness and specifically intended to harass him because of his testimony as a witness. It's certainly possible that all that was known here by any of the inmates on the bus was that Anderson was a snitch. It's all McDonald could have known is that Anderson was a snitch. You may not have any idea why people believed him to be a snitch. It's possible they could have believed him to be a snitch for some other reason. It's not uncommon for an informant... Just because there are possible innocent possibilities, does that help you? We can leave it at it's pure speculation for the state to assume anything beyond that. These are other possibilities, and there are no less speculative than the state's possibility that there was knowledge. Was there any evidence that the victim in this case did anything to qualify for this label other than testify at trial against somebody? There wasn't evidence of these other things, but there also wasn't evidence that anybody on the bus knew Tony Harris or knew that he had testified as a witness in the Tony Harris case. So I mean, the lack of evidence there is the key factor here. And again, we can throw out... I explained other reasons that this could have occurred, but that's not even necessary. You can certainly leave it at, well, all was proven by the evidence, and this does need to be proven beyond a reasonable doubt, is that you knew that other inmates thought you were a snitch. That's all that's known. There's no evidence of anything beyond that. So for those reasons, the state simply didn't prove him guilty beyond a reasonable doubt of the offense of harassing a witness. And I would ask this Court to reverse his conviction for harassing a witness. And if there are no other questions, then that's all I have. Thank you, Mr. Farrell. Mr. Lerner? May it please the Court, Counsel, of course the standard of review here is the common standard. The most important part of that standard is you consider the evidence in the light most favorable to the people. The defendant relies on the people did not prove intent or knowledge. Let me read this statute to you. A person is guilty of harassment of a witness if, having the requisite intent, he conveys a threat of injury or damage to the person or property or the witness. Of course, intent and knowledge usually has to be inferred from the circumstances. So we have to look at all of the evidence. So let me back up a couple months before this Tony Harris trial. The victim here testified that he was going to testify in the Tony Harris case. This was like two or three months before the case. He knew McDonald, the defendant, because they were in the same cell pod together. For some reason, McDonald, the victim, was moved to another pod, pod H. In that pod, he got in trouble with some of Tony Harris's friends. There was a scuffle. They then moved the victim to segregation for two or three months before the Tony Harris trial. I don't know about jails, but I'm sure information gets spread very quickly, just as it does through other circles. So he was in solitary for two or three months. Now we fast forward two or three months to November 20th and 21st. That is when Tony Harris's trial took place. That's when the victim testified. A day or two later, now he's on the bus with the co-defendant, Akeem Ross, and the defendant, McDonald. Of course, the defense counsel mentioned in passing that people on the bus were calling the defendant snitch. Another term was trick-ass n-word. The victim testified that he believed that these threats were directed towards him. He testified that this phrase meant a tattletale. Of course, I believe that tattletale would also encompass a witness. I think it's a clear inference that inmates do not like other inmates who testify against other inmates or cooperate with the state. So that is the intent that's inferred here, or motive for this beating. Considering all of this evidence together, any reasonable jury could have decided that the defendant was guilty of the offense in the light most favorable to the people. This court should not reverse the jury's verdict unless the evidence is improbable or unreasonable. Considering all of this evidence, you cannot say that the conviction is improbable or unreasonable based on all of the knowledge that the victim had and what the defendant had. All of this can be inferred, and the jury found the defendant guilty of both prongs of harassment of a witness. The defendant was only sentenced on the second prong. If you don't have any questions, I'd be happy to answer. I ask that you affirm the defendant's conviction for harassment of a witness. Thank you, Mr. Leonard. Mr. Vero, any rebuttal? Yes. So certainly there were some, at least Tony Harris knew that Anderson had testified against him. There was some testimony about some people who apparently knew him and got into some sort of fight with Reginald Anderson at some point, and after that he was moved to segregation. So there was testimony that my client did not have any contact with Reginald Anderson after Anderson had agreed to testify as a witness. In fact, there was testimony that he was moved to a different pod before Anderson was moved to a different pod, and then Anderson was later moved to segregation after that incident with Tony Harris. So there's really speculation to connect that with my client. So you could have a situation where some people in the jail certainly knew. But it's sort of like the telephone game that kids play where one tells another something and the other one tells another person, that person tells another person, and it goes through the chain. And all the facts from what was originally said may not be there. The thing that might stick in people's minds is that Anderson is a snitch. They may not care that he testified against someone they don't know, as a bunch of inmates here apparently don't know each other in this jail. And it's likely that the people on the bus would have been, the jail officers, the jail officials were not likely to put people on the bus who were closely connected with Tony Harris and were likely to do something like this. So it wouldn't be surprising at all to think that they had screened the people on the bus a little bit and thought about whether they might have a connection to Tony Harris. Well, let me ask you this. Is that only the offense that the defendant knew the person against whom the witness testified? No, it's just the most probable piece of evidence you could have that he knew about the testimony of the witness. Because otherwise, without that evidence here, all you have is, well, maybe they heard through this chain of talking that the guy was a snitch. And maybe he heard for the first time on the bus that the guy was a snitch. And the state made reference to motive. Well, if what's said by the state, the state has presented the idea of him having this motive in his closing argument, in fact. It originally said that his motive was to show other inmates that he was not a snitch, or to get his credentials, is what the state said in the closing argument. Because he had previously testified in a case against someone else, so he may have been believed by people to be a snitch. So if that was his motive, it doesn't matter whether the person is a witness or not. If he hears that they're a snitch, he's got motive to attack the person. He doesn't need to know that they're a witness. So he's got a motive that makes sense without him knowing anything about the testimony of the witness. And so here, all we have is, you know, that some of the inmates on the bus said snitch. They believed he was a snitch. We don't really know why they believed he was a snitch, if they knew anything about the testimony, if they knew Tony Harris. Even if they did, there's no evidence that my client knew about the testimony, knew that Reginald Anderson had ever testified as a witness. So there's just nothing but speculation as to whether he did anything more here than learn that Anderson was believed to be a snitch and attack a snitch. Which is something that the State has conceded makes sense as a motive in this situation. So the State just did not provide anything but speculation to show that my client knew that Reginald Anderson had testified as a witness and that he specifically intended to harass him because of his testimony. So for those reasons, I would ask that this Court to reverse the conviction. All right. Thank you very much, both of you, for your arguments here today. This matter will be taken under advisement and a decision will be issued to you as soon as possible. And with that, we'll take a brief recess for panel discussion.